# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON | No.  49918-5-II |
| Respondent | |
| v. | |
| EDDIE MONK | UNPUBLISHED OPINION |
| Appellant | |

LEE, J. — Eddie Monk appeals his possession of methamphetamine with intent to deliver and possession of heroin with intent to deliver convictions, arguing sufficient evidence did not support his convictions.  We affirm.

## FACTS

Longview police officers executed a search warrant at a trailer where they suspected evidence of drug trafficking involving Monk would be found.  Upon entering the trailer, the officers encountered Norman Schmidt and his girlfriend, Dechelle Ross Martin, in the front of the trailer where they appeared to be waking up.  The front of the trailer contained items belonging to Schmidt and Martin.  The officers then went down a hallway into a back bedroom where they found Monk and a female sitting on the bed.  The officers removed Monk to another room.

Longview police officer Benjamin Joseph Mortensen asked Monk, "Where is your bulk amount of dope"?  Verbatim Report of Proceedings (VRP) (Nov. 30, 2016) at 22.  Monk then

nodded his head toward the back bedroom where he was first located and said, "'You might want to check back there.'" VRP (Nov. 30, 2016) at 23.

The officers searched the back bedroom where they found a small glass table with three lines of suspected methamphetamine; two safes; mail addressed to Monk at a different address; knives, one of which had Monk's name engraved on it; a pair of pants with a set of keys in the pocket and a wallet, containing Monk's driver's license; a shotgun; a small tin box with shotgun shells; two glass pipes; small plastic baggies; and a backpack with another knife inside.

The officers used one of the keys located in the pants to open the first safe in the back bedroom. They found a baggie with of a brown substance believed to be heroin in the safe. The baggie with the suspected heroin weighed 17.62 grams.

The officers were unable to locate a key to unlock the second safe. They ultimately used tools to open it, and found a large amount of cash and a bag with about 18.5 grams of a white crystal substance that appeared to be methamphetamine.

Just outside the back bedroom's window, the officers located a digital scale with heroin and methamphetamine residue. The window was open when officers entered the back bedroom and the scale was laying on top of a large shrub.

The State charged Monk with possession of methamphetamine with intent to deliver while armed with a firearm, possession of heroin with intent to deliver while armed with a firearm, and first degree unlawful possession of a firearm.

During trial, Katheryn Dunn, a forensic scientist with the Washington State Patrol Crime Laboratory, testified that she tested the white crystal substance located in the second safe and that it tested positive for methamphetamine. Dunn confirmed that the scale located outside the back

bedroom window tested positive for methamphetamine and heroin. Dunn, however, did not testify about the brown substance located in the safe that officers opened with a key.

Also during trial, Longview Police Sergeant Mark Langlois, who has training in narcotics identification and field testing, testified that the substance located in the first safe looked like heroin. Longview Detective Calvin Ripp, who has training and experience in narcotics identification, also testified that the substance located in the first safe appeared to be heroin based on its dark tar appearance and that it was "wrapped in the traditional grocery baggie, piece off and twisted." VRP (Nov. 29, 2016) at 131. And Longview Detective Benjamin Joseph Mortensen, who also has training and experience in detecting heroin, testified that he performed the Valtox field test on the brown substance located in the first safe and it tested positive for heroin.

Monk testified that he frequently spent the night at the trailer because he had moved out of his own residence. He also testified that he did not have access to either safe in the back bedroom.

The jury found Monk guilty of possession of methamphetamine with intent to deliver while armed with a firearm, possession of heroin with intent to deliver while armed with a firearm, and first degree unlawful possession of a firearm.

Monk appeals.

ANALYSIS

Monk argues that he was denied his state and federal due process rights because insufficient evidence existed to support his possession with intent to deliver convictions. We disagree.

A.    STANDARD OF REVIEW

The due process clauses of the federal and state constitutions require that the State prove every element of a crime beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 476–

77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. To determine if there is sufficient evidence to support a conviction, this court views the evidence in the light most favorable to the State and determines whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). A sufficiency challenge admits the truth of the State's evidence and all reasonable inferences drawn from it. *Id*. at 106. All such inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *Id. (quoting State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). Circumstantial evidence and direct evidence are equally reliable. *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016).

B.    POSSESSION OF METHAMPHETAMINE WITH INTENT TO DELIVER

Monk contends that sufficient evidence does not show that Monk possessed the methamphetamine located inside the second safe. We disagree.

Under RCW 69.50.401(1), "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." Possession of a controlled substance may be actual or constructive. *State v. Ibarra-Cisneros*, 172 Wn.2d 880, 897, 263 P.3d 591 (2011). Actual possession occurs when a defendant has physical custody of the item, and constructive possession occurs if the defendant has dominion and control over the item. *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002). Dominion and control can be over "either the drugs or the premises on which the drugs were found." *State v. Callahan*, 77 Wn.2d 27, 30-31, 459 P.2d 400 (1969).

This case involves constructive, rather than actual, possession of methamphetamine. "Constructive possession is established by examining the totality of the situation and determining

if there is substantial evidence [tending to establish circumstances] from which a jury can reasonably infer the defendant had dominion and control over the item." *State v. Jeffrey*, 77 Wn. App. 222, 227, 889 P.2d 956 (1995). Dominion and control need not be exclusive to establish constructive possession, but close proximity alone is insufficient; other facts must enable the trier of fact to infer dominion and control. *State v. George*, 146 Wn. App. 906, 920, 193 P.3d 693 (2008).

Here, Monk was located in the trailer's back bedroom. Numerous items belonging to Monk were located in the back bedroom. When asked "Where is your bulk amount of dope?" VRP (Nov. 30, 2016) at 22. Monk nodded his head toward the back bedroom and said, "'You might want to check back there.'" VRP (Nov. 30, 2016) at 23. Inside the back bedroom was a table with three lines of methamphetamine and directly outside the bedroom's open window was a scale containing both methamphetamine residue and heroin residue. Heroin was found in the first safe and methamphetamine was found in the second safe. While officers had to pry the second safe open, this is not dispositive that the contraband did not belong to Monk. Rather, we look at the totality of the circumstances. *Jeffrey*, 77 Wn. App. at 227.

In *State v. Mathews*, 4 Wn. App. 653, 655, 484 P.2d 942 (1971), Mathews and three other individuals were in a car stopped by the police. *Id.* A small package of heroin was found underneath the carpet near the right back seat where Mathews had been sitting. *Id.* While recognizing that Mathew's proximity to the heroin was not enough to prove constructive possession, the court identified other evidence that established the necessary link, including the fact that Mathews was a known heroin user and paraphernalia used by heroin addicts was found not only in his coat but also underneath the right back seat where he was sitting. *Id.* at 658. The

*Mathews* court held that evidence of proximity coupled with other circumstances linking Mathews to the heroin was sufficient to justify a finding that a back seat passenger had constructive possession of drugs found under an automobile's carpet. *Id*. at 658.

Like in *Mathews*, looking at the evidence in the light most favorable to the State, any rational trier of fact could find beyond a reasonable doubt that Monk had dominion and control over the contents of the second safe in the back bedroom, which included methamphetamine. Monk was found in the back bedroom where the safe containing the methamphetamine was located, Monk testified that he frequently spent the night at the trailer, mail addressed to Monk was found in the back bedroom, the key to one of the safes in the back bedroom was found in a pair of pants containing Monk's wallet and drivers' license, Monk signaled toward the back bedroom when he was asked where the "bulk amount" of his drugs was kept, and a small glass table with three lines of suspected methamphetamine was found in the back bedroom. Accordingly, we hold that there was sufficient evidence for the jury to convict Monk of possession of methamphetamine with intent to deliver.

C.    POSSESSION OF HEROIN WITH INTENT TO DELIVER

Monk next contends that sufficient evidence does not show that the substance found inside the first safe was heroin. We disagree.

"[T]he introduction of expert chemical analysis is not essential to convict" for possession of a controlled substance. *State v. Eddie A.*, 40 Wn. App. 717, 720, 700 P.2d 751 (1985). On the contrary, lay testimony and circumstantial evidence may be sufficient to establish the identity of a controlled substance. *Id*. Lay testimony may be presented by people who are familiar with the substance through prior use, trading, or law enforcement. *State v. Hernandez*, 85 Wn. App. 672,

6

676, 935 P.2d 623 (1997) (citing *United States v. Dominguez*, 992 F.2d 678, 681 (7th Cir.), *cert. denied*, 510 U.S. 891 (1993). Circumstantial evidence may include the physical characteristics of the substance as well as the packaging. *Hernandez*, 85 Wn. App. at 678-79.

Relying on *State v. Colquitt*, 133 Wn. App. 789, 137 P.3d 892 (2006), Monk argues there is little evidence to establish the identity of the brown substance located in the first safe. However, Monk's reliance on this case is misplaced. The trial court in *Colquitt* terminated Colquitt from drug court. *Id.* at 794. Per his agreement with drug court, Colquitt then proceeded to a bench trial. *Id.* at 793. Colquitt had stipulated to the admission of the police report as the sole evidence the trial court would consider. *Id.* The police report stated that the substance seized from him field tested positive for cocaine. *Id.* at 792. The *Colquitt* court held that this evidence alone was insufficient to support a verdict of guilt. *Id.*

Here, unlike in *Colquitt*, Langlois, who has training in narcotics identification and field testing, testified that the substance located in the first safe looked like heroin. Ripp, who also has training and experience in narcotics identification, testified that the substance located in the first safe appeared to be heroin based on its dark tar appearance and the way it was wrapped. And Mortensen, who also has training and experience in detecting heroin, testified that he performed the Valtox field test on the brown substance located in the first safe and it tested positive for heroin. Additionally, heroin was located on a scale directly outside the back bedroom's open window.

Looking at the evidence in the light most favorable to the State, any rational trier of fact could find beyond a reasonable doubt that the substance located in the first safe was heroin. Accordingly, we hold that there was sufficient evidence for the jury to convict Monk of possession of heroin with intent to deliver.

No. 49918-5-II

D.      APPELLATE COSTS

Monk asks that this court decline to impose appellate costs if the State prevails on appeal. If the State makes a request for appellate costs, Monk may challenge that request before a commissioner of this court under RAP 14.2.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J

We concur:

Worswick, J

Sutton, J